Brian K. Jackson (15296)
Brian K. Jackson, LLC
503 W. 2600 S. Suite 200
Bountiful, Utah 84010
Phone: (801) 441-8922
brianj@bjacksonlaw.com
Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Adam Fuller; Steve Sprague; Gabriella Gourdin; Charlotte Jones; Mikaeli Lechuga; Aimee Nyguen; Steve Rosales; Hannah Wilson; Riley Westerguard; Ted Winkworth; Brogan Knebeo; Rebecca Rodriguez; Patrick Mac; Annika Bouttavong.<br>    Plaintiffs.<br>v.<br>Salt Lake City.<br>    Defendant, | **AMENDED COMPLAINT**<br><br>Civil No.: 2:21-cv-00539-DAO<br><br>***JURY TRIAL REQUESTED*** |

Plaintiffs, Adam Fuller; Steve Sprague; Gabriella Gourdin; Charlotte M. Jones; Mikaeli

Lechuga; Aimee Nyguen; Steve Rosales; Hannah Wilson; Riley Westerguard; Ted Winkworth;

Brogan Knebeo; Rebecca Rodriguez; Patrick Mac; Annika Bouttavong., through counsel of

record, now brings this action for injunctive and monetary relief in Federal District Court against

Defendant, Salt Lake City, based on the following:

### PARTIES, JURISDICTION, VENUE

1.     Plaintiff, Adam Fuller, is a resident of Salt Lake County, Utah.

2.     Plaintiff, Steve Sprague, is a resident of Davis, Utah.

3.     Plaintiff, Gabriella Gourdin, is a resident of Davis County, Utah.

4.      Plaintiff, Charlotte M. Jones is a resident of Salt Lake County, Utah.

5.      Plaintiff, Mikaeli Lechuga is a resident of Davis County, Utah.

6.      Plaintiff, Aimee Nyguen is a resident of Davis County, Utah.

7.      Plaintiff, Steve Rosales is a resident of Salt Lake County, Utah.

8.      Plaintiff, Hannah Wilson is a resident of Salt Lake County, Utah.

9.      Plaintiff, Riley Westerguard is a resident of Salt Lake County, Utah.

10.     Plaintiff, Ted Winkworth is a resident of Salt Lake County, Utah.

11.     Plaintiff, Brogan Knebeo is a resident of Summit County, Utah.

12.     Plaintiff, Rebecca Rodriguez is a resident of Salt Lake County, Utah.

13.     Plaintiff, Patrick Mac is a resident of Salt Lake County, Utah.

14.     Plaintiff, Annika Bouttavong is a resident of Salt Lake County, Utah.

15.     Defendant, Salt Lake City, is a local city government located in Salt Lake County, Utah.

16.     Venue is proper pursuant as the incidents alleged occurred in Salt Lake County Utah and Defendant is a resident of Salt Lake County, Utah.

17.     Federal Jurisdiction is proper as this is a matter arises out of a federal question under 42 U.S.C. Section 1983.

### LEGAL CLAIM[1]
### VIOLATION OF 42 U.S.C 1983

    **a.  Factual allegations**

        **i.   Curfew Order / Dispersal Order**

18.     On Saturday May 30th, 2020, the City of Salt Lake created an official policy under the color of the law when it issued an unlawful curfew order. The curfew order was entered under a

---

[1] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

"Emergency Proclamation" signed by Salt Lake City Mayor Erin Mendenhall.

19.     The proclamation indicated that a curfew would be imposed "in all public places within the geographical boundaries of Salt Lake City, including streets and rights-of-way, from Saturday, May 30, 2020 at 8 PM to Monday, June 1st, 2020 at 6 AM."

20.     The order prohibited all persons from using standing, sitting, traveling or being present on any public street or in any public place with exceptions for law enforcement and paramedics, traveling to work, attending religious services, obtaining food, caring for a family member, seeking medical care, and patronizing private businesses." Public place was defined as "any place" whether it was privately or publicly owned property, accessible to the general public.

21.     The order also made it a class B misdemeanor for any one who violates the emergency proclamation.

22.     The order indicated that it was based on the death of George Perry Floyd claiming and indicated that civil disturbance had occurred within Salt Lake City.

23.     This official policy and custom entered by the Mayor was signed on 19:37 (7:37 PM) MDT, 23 minutes before the curfew order was to be enforced.

24.     Some plaintiff's specifically described in this complaint based on his or her circumstances under sections 3 and 4 of this action were arrested while lawfully assembled and protesting without any other legal violations. Other Plaintiffs also described in this complaint under sections 4 and 5 of this complaint were also shot unprovoked by officers with rubber bullets during the protests and or suffered from other physical injuries from law enforcement while peacefully protesting.

**1. The Curfew Order violated freedom of assembly and freedom of speech under the First Amendment of the U.S. Constitution.**

25.     At the same time the order was signed, and prior to the enactment of the order, there were individuals, including all Plaintiffs named in this complaint, peacefully assembled in Salt Lake City. Plaintiffs were exercising their rights under free speech and right to peacefully assemble under the first amendment of the United States Constitution as it related to their stance on the death of George Floyd. The Curfew Order deprived Plaintiffs of this right which effectively made it illegal for anyone to protest George Floyd in the City of Salt Lake.

> **i.     The Curfew Order was facially unconstitutional as a prior restraint on the first amendment that was not narrowly tailored to a compelling government interest.**

26.     The curfew order entered on its face, was unconstitutional. It was unlawful prior restraint on freedom of speech and freedom of assembly under the First Amendment. The order forbade any assembly and free speech movements not only on public property but also on private property for over 72 hours in the entirety of the Salt Lake City limits. Given the broad breadth of the restriction in such a large City, this restriction was not narrowly tailored to a compelling government interest. Additionally, the basis and or motivating force for the curfew order was to quell all peaceful demonstrations. This is not a compelling government interest and there was no interest compelling enough to quell all first amendment rights within the entirety of Salt Lake City at that time.

> **ii.    The purpose and intent of the Curfew Order was content specific to curtail all speech and assemblies related to the George Floyd protests in Salt Lake City.**

27.     The purpose and intent, in light of the nation-wide George Floyd protests as noted in the curfew order, was also content specific. The purpose of the curfew order was to quell and place a prior restraint on all speech, assemblies and peaceful demonstrations related to the death of

George Floyd and issues as to police brutality and made it a crime to do so.

28.     The blanket curfew order on its face encompassed the entirety of Salt Lake City for over 72 hours. The curfew order wholly denied free speech and the right to assemble on all public places. It was not narrowly tailored with narrow objective standards required under the 1st Amendment of the U.S. Constitution. Instead, the language was impermissibly broad that abridged the right to freely assemble in the entirety of Salt Lake City and is unconstitutional. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147 (1969). The prior restraint on the freedom of assembly affected all Plaintiffs listed in this action who were all lawfully assembled exercising their first amendment rights. No Plaintiffs named in this complaint were part of any civil unrest and they were unlawfully deprived of their first amendment rights.

29.     Plaintiffs also maintain the intent of the City was also not to enforce the curfew order, but to quell and dispel individuals that were peacefully protesting. The City of Salt Lake, in anticipation of the curfew order before arrests had been made, dispatched a "Jail Bus" as a means to move people out of the protest area.

30.     The City of Salt Lake had no intention to simply give an individual a citation for a Class B misdemeanor.

31.     The City of Salt Lake had no intention of arresting individuals past curfew who were not part of the protests and or not in the areas where demonstrations were held in the downtown area.

32.     The City of Salt Lake's intention was to arrest, detain, move and remove individuals that exercised their first amendment rights and were peacefully assembled in the downtown area related to the George Floyd protests.

33.     Or in other words, the intent was to deprive Plaintiffs named in this complaint as well as

others, that were peacefully assembled, of their liberty for exercising their first amendment rights that night.

### iii. The Curfew order and its enactment violated first amendment procedural requirements of notice and the ability to respond prior to restraining individual's first amendment rights.

#### a. The curfew order failed to give Plaintiffs proper notice and ability to argue the decision before it was enacted.

34.     Additionally, the curfew order was a prior restraint on free speech in violation of the 1st Amendment and freedom of assembly. It preemptively restrained individuals from protesting without notice and the ability to argue the decision before it was enacted.

35.     The curfew order did not first notify the demonstrators before entering the order. Notification is procedurally necessary under the first amendment.

36.     Individuals need notice as well as time to argue a decision as it relates to the first amendment before it can be enacted.[2] The City also did not make efforts to give such notice to the public to argue the decision prior.

37.     The order was signed 20 minutes before the curfew order was to go into effect.

38.     As a result, how the curfew was enacted was done under the color of the law and deprived Plaintiffs of their 1st amendment rights.

#### a. The Curfew order also violated the procedural requirements of the first amendment as it did not give Plaintiffs the opportunity to comply and a clear and unobstructed exit path and notice of the dispersal order.

39.     Under the requirements for a dispersal order under the 1st Amendment, shutting down a

---

[2] *Carroll v. Princess Anne*, 393 U.S. 175 (1968) (a state cannot preemptively prohibit persons from holding a public meeting, without first notifying the persons involved, and providing the persons an opportunity to argue the decision.)

protest through a dispersal order must be law enforcement's last resort. This was not the case here.

40.     There is no evidence that anything was done prior by the City prior to enactment of the curfew order to demonstrate the curfew order was the City's and law enforcement's last resort. The City also cannot break up a gathering unless there is a clear and present danger of riot, disorder and immediate threat to public safety.

41.     Also, procedurally, if a dispersal order is issued, there must be a reasonable opportunity to allow people to comply, including sufficient time and a clear and unobstructed exit path as well as a clear and detailed notice of the dispersal order, how much time to disperse and the consequences of failing to disperse. (See Coates v. *City of Cincinnati,* 402 U.S. 611 (1971).

42.     Here, there was no unobstructed exit path as noted with each Plaintiff identified in this complaint, many Plaintiffs were trying to return and could not as the City did not provide a clear and unobstructed exit path.

43.     Also, as noted with each Plaintiff, the announcement of the dispersal order and the time of the arrests after the announcement was not sufficient time to allow Plaintiffs to disperse.

44.     The failure to follow these procedures and how the curfew order was enacted and enforced rendered the official policy of the City in violation of the first amendment and made under the color the color of the law. The curfew as a result deprived Plaintiffs of their first amendment right to free speech and assembly.

> iv.     **The Curfew Order also as enacted was unconstitutionally vague and unlawful on its face. It made it a crime for anyone in the City limits exercising hisor her first amendment rights, regardless of the area or location in a public or private area a crime.**
>
> a.  **The curfew order was unconstitutionally vague on its**

**face given the broad restrictions on the entire City.**

45.     Salt Lake City's curfew order also made it a crime for individuals who were peacefully

assembled and who exercised free speech within its City limits for 72 hours.

46.     On its face, if individuals were organized on a sidewalk, far away from downtown, in

front of their house peacefully protesting issues related to George Floyd during the curfew's

enactment, the individuals would be in violation of the curfew order and could have been

charged with a misdemeanor for the exercise of that right.

47.     It was also unconstitutionally vague as it limited anyone no matter their motive, from

being out in the City for 72 hours.

48.     It limited areas where no one was assembled to protest within the City of Salt Lake and

all public and private areas within the City of Salt Lake.

49.     It also vaguely infringed on individual's rights who were peacefully protesting George

Floyd or protesting any other issue in any area of Salt Lake for 72 hours.

> **a. The curfew order was also unconstitutionally vague and made it criminal for any individual to exercise his or first amendment rights in Salt Lake for 72 hours.**

50.     Additionally, a state government cannot criminalize a peaceful expression of unpopular

views. When individuals are arrested and punished for exercising his or her free speech it is a

deprivation and infringement of those individual's rights to free speech. *(See Edwards v. South

Carolina,* 372 U.S. 229 (1963)).

51.     The order was unconstitutionally vague as it punished anyone who exercised their first

amendment rights for 72 hours who tried to protest within the City of Salt Lake.

52.     As a result, the curfew order, an official policy of the City, was unconstitutionally vague

therefore made under the color of the law. The order deprived Plaintiffs of their right to free speech and assembly who were protesting that night.

53.     As a result of the curfew order as well, Plaintiffs were punished, either from physical abuse from law enforcement noted in the unlawful use of force section of this complaint or criminized from being arrested noted in the unlawful arrest section of this complaint for exercising his or her first amendment rights.

> **v.     The Curfew Order also as enacted was unconstitutional on its face and in practice because it made one exercising its first amendment rights a crime**.

54.     The law enforcement officers also arbitrarily focused the enforcement of the provisions of the curfew order on individuals that were assembled to protest the death of George Floyd.

55.     The purpose of the curfew order on its face and in practice was to target those exercising their first amendment rights, including Plaintiffs, in relation to the George Floyd protests and make it criminal for individuals to exercise those rights throughout the City of Salt Lake. The curfew order specifically indicated that it was in response to the nation-wide George Floyd protests and treatment of African Americans toward Police officers.

56.     As a result, the curfew order on its face was entered into under the color of the law as its intent was to specifically infringe on Plaintiff's first amendment rights who were protesting the George Floyd issue. Its purpose was to criminalize anyone that protested George Floyd for 72 hours within the City limits of Salt Lake.

57.     Its purpose was to specifically infringe on the named plaintiffs rights to their first amendment right to freedom of assembly and free speech. It not only limited the ability to protest for 72 hours within the City of Salt Lake, it made it criminal for anyone to peacefully protest and

assemble in violation of Plaintiff's rights. The curfew order as a result was made under the color of the law.

58.    Plaintiffs named in this complaint were punished for and criminalized for exercising the first amendment rights in violation of the first amendment. Plaintiffs named in this complaint were either punished from physical abuse and or were shot by law enforcement or were arrested for exercising their first amendment rights. The curfew order itself was also a punishment for people exercising their first amendment rights and deprived Plaintiffs of their liberty while in the Salt Lake City area. The actions of law enforcement were due to the official policy of the curfew order.

59.    The curfew order's intent was also content specific as to quell protests related to unfair treatment based on race. The curfew order specifically indicated that it was in response to the nation-wide George Floyd protests and protests of treatment of African Americans toward Police officers. The curfew order limited an entire race from its ability to protest the treatment of African Americans from law enforcement as well as others that were protesting the same.

60.    The curfew still allowed individuals to meet as a religious organization and allowed individuals to still run and travel to their private businesses and indicates the intent was again to quell the specific content of speech related to George Floyd in Salt Lake City. The content specific discriminatory speech again was not narrowly tailored toward a specific objective and instead was content specific against speech and individuals of a specific race andn others that protested race-based treatment.

61.    In stark contrast, it was indicated by federal authorities including the FBI that possible violence would erupt at State Capitals on or about January of 2021, from individuals protesting

the federal elections. The City never imposed the same curfew order during those protests and on information or belief, never made any arrests for curfew violations, further indicating an unconstitutional content specific intent toward those that protested an issue related to race and civil rights.

62.     The denial of the first amendment rights explained above ultimately led to Plaintiff's deprivation of liberties named in this complaint who were arrested by law enforcement and restrained Plaintiff's inability to exercise their right to peacefully assemble and to free speech. The individuals that made the arrests were individuals that acted as agents on behalf of Salt Lake City to enforce the unlawful curfew policy the City enacted under the color of the law. The City would be liable for the arrests made due to the official policy it created that led to the deprivation of Plaintiff's liberties explained below. Plaintiff's were also damaged as a result of the violations as explained further below as to each Plaintiff's specific circumstance.

**3. The unlawful curfew order Salt Lake City entered deprived the Plaintiff's liberty who were arrested without probable cause in violation of the 4th Amendment of the U.S. Constitution.**

> **a.  The arrests were made pursuant to an official policy of Salt Lake, the curfew order that was unlawful and made under the color of the law.**

63.     The curfew order violated the first amendment and fourteenth amendment as described in section 1 and 2 above and incorporated in this section and was made under the color of the law. Given that the curfew order was illegal, the arrests as a result, were also unlawful and could not have probable cause that a crime occurred.

64.     The arrests were made due to an official policy under the curfew order from Salt Lake law enforcement and its agents acting under the direction of the Salt Lake City curfew order to enforce it and deprived Plaintiffs of their liberty without due process under the 4th Amendment

of the U.S. Constitution. The City specifically announced it would commence arrests pursuant to the curfew order.

> **b. There was no probable cause to arrests Plaintiffs pursuant to Utah Code Section 76-9-104.**

65.     Additionally, under the Utah Code for a failure to disperse charge, a person is guilty of failure to disperse when remaining at the scene of a riot, disorderly conduct, or unlawful assembly having been ordered to disperse by a peace officer. This is a class C misdemeanor for failure to disperse and does not apply to an individual who attempted but was unable to leave the scene of an unlawful assembly. Utah Code Section 76-9-104.

66.     Upon information or belief at the time the arrests were made, there was no scene of riot. None of the Plaintiffs were rioting or had committed disorderly conduct. The only intent and purpose of the arrests of Plaintiffs was to get peaceful protestors out of the Salt Lake City area acting under the curfew order. There was one incident hours earlier in the afternoon in the area where Plaintiffs were located, but not a part of, where a few individuals flipped an unoccupied law enforcement vehicle, there were no rioting issues at the time of the arrests or claims Plaintiffs were committing disorderly conduct.

67.     Also, based on the discussion under the first amendment above, this was not an unlawful assembly given the unlawfulness of the curfew order and pursuant to first amendment rights.

68.     Without Plaintiffs being part of a riot, disorderly conduct or unlawful assembly, there could be no probable cause to make an arrest under this statute.

69.     This is in addition to Plaintiffs attempts to leave the protests without a clear path to do so explained with each Plaintiff's claims and explained in the first amendment section and the failure to timely and properly announce the curfew order.

### c. It is unlawful to arrest and criminalize individuals for exercising their first amendment rights.

70.     The enforcement of the curfew order and arrests of the Plaintiffs described here was in violation of their right to assemble and a penalty on Plaintiffs for exercising their right to free speech and deprived Plaintiffs of their liberty without due process while exercising that right. As noted in the first amendment section, it is unlawful to punish an individual and make criminal a person exercising his or her first amendment rights.

### d. Unlawful arrests of specific Plaintiffs named in this complaint.

71.     All of the Plaintiffs that were arrested identified further in this section occurred on or around 400 S. and State Street in Salt Lake City, Utah unless otherwise noted. Each Plaintiff was lawfully assembled and not a threat to the public or part of a riot. 10:06 PM was the first time it was announced the police would start to make arrests for not dispersing in this area without direction as to where protestors could peacefully leave. It was announced over a loud speaker at the Utah Capital Building where there were also protests but not in the 400 S. area where all Plaintiffs were located.

72.     Many Plaintiffs, including Mr. Westerguard, Ms. Jones indicated that once they were arrested, law enforcement didn't know what to charge the individuals. This shows law enforcement knew or should have known these individuals were arrested absent probable cause. This also shows that these individuals were arrested pursuant to the official policy of the curfew order.

73.     Later, on or about June 25th, 2020, the Salt Lake County Attorney's office announced that it would not seek prosecution of individuals that were charged with a failure to disperse charge. Salt Lake City District Attorney Sim Gill indicated that the group "had a political

message that is constitutionally protected and that they were free to express that." Mr. Gill also indicated that there were many individuals that weren't aware the curfew order was put into place.

74.    This further indicates that the City was aware that the arrests were made without probable cause and that the City by admission, had no probable cause to commence charges and prosecution of the cases against these individuals for failure to disperse and based on the individual's first amendment rights.

### i.    Ms. Nyguen, Ms. Gourdin, Mr. Sprague and Mr. Fuller

75.    On May 30th, 2020, Aimee Nyguen, Gabriella Gourdin, Steve Sprague and Adam Fuller attempted to leave the protest and were arrested approximately 10 minutes after the announcement while they were trying to leave. Ms. Nyguen and Ms. Gourdin were detained by SWAT officers acting at the direction of Salt Lake City under the official curfew order and the SWAT officers allowed them to leave. A few steps and moments afterwards, these two individuals were arrested by other police officers acting under the official curfew order under the color of the law. There was no clear path where these individuals could exit the area. Mr. Sprague and Mr. Fuller were a few feet ahead of Ms. Nyguen and Ms. Gourdin and were never allowed to get up and leave like Ms. Nyguen and Ms. Gourdin.

76.    These individuals seek damages associated with damages associated to deprivation of liberty for false imprisonment and the amount of time they were detained. They also seek damages to their reputation associated to false light[3] and false publicity associated with their arrests with the publicity given of the arrests from the local media, including live local coverage,

---

[3] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

local newspaper coverage and arrest websites.

77.    **Ms. Gourdin's** issues with being in the media affected her ability to keep her job and get another job. Ms. Gourdin suffered from an emotional break-down due to the experience and is seeking help professionally and was put on four different kinds of medications.

78.    She attends counseling once a week. Ms. Gourdin was unable to work and was not stable after seeing her picture in her news and had to call-out which affected her performance and was terminated a few weeks after the protests. Ms. Gourdin was working from home with Guitar Center and was making $15.50 an hour plus commission and was unable to obtain health benefits due to the termination.

79.    Ms. Gourdin struggled with anxiety and depression prior to this but nothing that required medication or affected her ability to work. At approximately $1,000.00 per counseling session and $700 a month for medication, her past medical expenses to day are $42,300.00. Ms. Gourdin is 24 years of age with the average life expectancy of a U.S. female at 77 years, calculated at that amount, her future medical could look as much as $2,241,900.00. This is in addition to emotional distress past and future.

80.    When Ms. Gourdin sought other jobs after that she had to explain the arrest to potential employers because it was still on her record. Ms. Gourdin finally got a stable job at the University of Utah the start of October of 2020 making $15.25 an hour with health benefits.

81.    **Ms. Nyguen** also had to deal with an investigation with her job related to the arrest.

       **ii.**    **Hannah Wilson**

82.    That same night, on May 30th, Hannah Wilson was told by police to leave but she had law enforcement officers surrounding her that would not let her leave. She was ultimately

arrested without a clear path to leave the area. She was told to get on the ground a few times and to go home or get arrested but they never let her go home.

83.     Ms. Wilson was unlawfully arrested without probable cause due to the unlawful curfew order. Ms. Wilson was also not part of a riot or disorderly conduct. Ms. Wilson was not given a clear path the leave the area.

84.     Ms. Wilson seeks damages related to the deprivation of liberty under damages related false imprisonment and the amount of time she was falsely retained. Ms. Wilson also seeks damages related to the false publicity of the arrests that relate to her reputation with the local media and arrest websites.

### iii.     Mr. Mac

85.     Patrick Mac was around 600 S. and 300 E. and also peacefully assembled. Mr. Mac saw individuals get shot with rubber bullets and heard the arrest announcement on the curfew.

86.     Mr. Mac asked law enforcement if they were shooting people or arresting people. 30 seconds after the announcement was made and after the comment of Mr. Mac, he was arrested.

87.     There was no probable cause Mr. Mac had committed a crime at that time and was arrested for asking why other individuals were getting shot. This was also made under the color of the law and without probable cause to arrest Mr. Mac and acting under the official policy created by the City.

88.     Mr. Mac has damages associated with damages from false imprisonment for the amount of time detained as well as for the false publicity related to the false arrest that affected his reputation from the local media and arrest websites.

### iv.     Mr. Rosales.

89.     One June 1st, 2020, Steve Rosales was in his vehicle, driving away from the protests when his vehicle was pulled over by a SWAT vehicle. There was no probable cause that Mr. Rosales had committed any unlawful activity at that time to pull over his vehicle. There was no additional evidence that Mr. Rosales had committed any unlawful activity after he was stopped to further detain him and or arrest him.

90.     Despite this, Mr. Rosales was arrested and placed on the bus to the Davis County jail and his car was seized and impounded absent probable cause. Mr. Rosales incurred a $248.23 towing bill.

91.     Mr. Rosales seeks damages to the unlawful stop and arrest related to damages of false imprisonment and deprivation of his liberty. Mr. Rosales also seeks damages related to his reputation and the false publicity related to the incident from the local media and arrest websites.

92.     All individuals described above were deprived of their liberty without probable cause and were arrested under the official policy of the City that was unlawfully entered in violation of the first amendment procedural related issues under the first amendment. All individuals seek damages related to the unlawful deprivation of their liberty without probable cause comparable to damages for false imprisonment for the amount of time of each detention.

**4. The City committed unlawful arrests and unreasonable use of force against specific Plaintiffs that deprived them of their liberty and in violation of the 4th Amendment of the U.S. Constitution.**

93.     In addition to the individuals that were unlawfully arrested without probable cause, there were also individuals that were unlawfully shot with unreasonable force by law enforcement and agents acting on behalf of the City. The actions were done as a result of the official policy entered by the mayor and the enforcement of the unlawful curfew City policy that was entered

under the color of the law.

94.     Law enforcement shot rubber bullets to get the protestors to leave the area to enforce the

unlawful curfew order and attempted to get the protestors to disperse. They were not used as an

attempt to stop a fight or based on someone commiting disorderly conduct or to defend

themselves. The rubber bullets were attempts to just get people to physically move and leave

based on the curfew order. The use of force to enforce an illegal curfew order is unreasonable in

light of the circumstances and the first amendment rights of these individuals explained in part 1

of the legal section of this complaint.

95.     The use of force was also unreasonable because the Plaintiffs identified in this complaint

inability to leave the area and the arbitrary commands some Plaintiffs were given from some

officers to leave the area and from other officers where Plaintiffs were arrested.

96.     The use of force was also unreasonable because there was no probable cause that any

individual named in this complaint had committed a crime.

97.     The use of force was also unreasonable as it was a punishment toward individuals,

lawfully assembled, who were exercising their first amendment rights which is unlawful as noted

in the first amendment section.

98.     The use of force was also unreasonable because each Plaintiff identified below and under

each circumstance, no use of force was required. Each Plaintiff noted shows they were all shot

and or pushed and dragged, without provoking police officers, they were not causing a

disturbance or committing disorderly conduct and the force was not needed for an officer to

defend his or herself. The only basis for shooting these individuals was to enforce an unlawful

curfew order, to infringe on these individual's first amendment rights and to clear the City area of

those peacefully exercising those rights. This use of force in light of the circumstances is unreasonable.

### i. Ms. Rodriguez

99.    On May 30th, 2020, Rebecca Rodriguez was arrested while she was peacefully protesting and as a result, there was no probable cause to arrest her. Prior to her arrest, Ms. Rodriguez was pushed by law enforcement several times over the course of the night unprovoked. The first shove was around 5 PM. Ms. Rodriguez was also shot in the leg. Ms. Rodriquez sustained several bruises on her forearms, hands and upper legs as well as a bruise five inches in diameter on her hamstring.

100.    Ms. Rodriquez did nothing to provoke officers and the use of force used against Ms. Rodriguez was unreasonable in light of the circumstances.

101.    Ms. Rodriguez seeks damages related to the deprivation of her liberty with the unlawful arrest with damages comparable to false imprisonment as well as damages incurred due to being shot unprovoked under damages related to an assault and battery[4] claim and pain and suffering related to those damages.

102.    Ms. Rodriguez has also suffered emotional trauma due to this incident. For a few weeks after the protests, Ms. Rodriguez was hypervigilant, looking for anything that could pose a threat. She felt fatigued and would sleep much more than usual and felt "drained" from the whole experience.

103.    Ms. Rodriguez would have flashbacks of officers pushing through the crowd of standing people, being violent in the crowd, getting arrested, being handcuffed and being hit in the leg.

---

[4] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

This resulted in Ms. Rodriguez suffering in new panic attacks and general anxiety she is still suffering from and is receiving medication for and which she now seeks compensation for.

### ii. Ms. Jones

104.    On June 1st, 2020, Charlotte M. Jones was a medic and was there to help take care of individuals that were hurt. She had giant red medical crosses taped on her coat. Ms. Jones also told officers she was a medic.

105.    The unlawful curfew order also made an exception for emergency personnel.  Despite this, Ms. Jones was still arrested.

106.    During that time, Ms. Jones was shot unprovoked in the arm with rubber bullets from officers and sustained bruises. Ms. Jones was never given a time-frame from officers to disperse and or commands to disperse. Ms. Jones was rammed with a riot shield from an officer unprovoked.

107.    While Ms. Jones was trying to leave, her friend, Ms. Lechuga was grabbed by the backpack by law enforcement and pulled back and slammed to the ground. Ms. Jones turned to assist her friend and an officer took Ms. Jones to the ground and arrested her. Ms. Jones also had her phone searched and seized.

108.    Ms. Jones seeks damages related to the deprivation of her liberty with the unlawful arrest, as well as damages with the unreasonable use of force comparable to damages for assault and battery including pain and suffering from the assault and battery.[5] Ms. Jones was under arrest for at least seven hours.

---

[5] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

109.    Ms. Jones also seeks damages related to the false publicity and false light[6] she received from the arrests with claims that she was arrested in violation of the criminal code with the publicity given to all arrestees from the incident in the local media. Ms. Jones also seeks damages related to the emotional trauma she sustained dealing with the incident at the time and having to deal with it moving forward.

### iii. Ms. Lechuga

110.    Mikaeli Lechuga was with Ms. Jones. At the time of Ms. Lechuga's arrest, an officer yakend Ms. Lechuga by the strings of her backpack and yanked her to the ground. Ms. Lechuga sustained redness and scarring from the incident that lasted weeks afterwards.

111.    The handcuffs on Ms. Lechuga and Ms. Jones were also so tight that Ms. Lechuga's shoulders were tight and her arms were numb. Both individuals asked to have the handcuffs adjusted three separate times and never were. The use of force against Ms. Lechuga in dragging her to the ground and the scarring she sustained to enforce the curfew order was unreasonable in light of the circumstances.

112.    Ms. Lechuga seeks damages related to the deprivation of her liberty with the unlawful arrest, the pain and suffering she sustained and injuries during the unlawful arrest as well as damages with the unreasonable use of force comparable to damages for assault and battery[7] including pain and suffering.

113.    Ms. Lechuga also seeks damages related to the false publicity and false light[8] she received from the arrests given the publicity from the local media with the false claim that Ms.

---

[6] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

[7] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

[8] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

Lechuga violated the Utah Criminal Code. Ms. Lechuga also suffered from emotional trauma from the incident and seeks damages related to trauma she sustained dealing with the incident at the time and having to deal with it moving forward.

### iv. Ms. Bouttavong

114.    On May 30th, 2020, Annika Bouttavong was by the city library and law enforcement had told her to go South which she did. Around 7 - 9 PM an officer that was parallel to Ms. Bouttavong was about 8 feet away from her and shot her in the face with a rubber bullet unprovoked. The use of force from that distance and unprovoked was unreasonable. Ms. Bouttavong felt pressure and then started screaming in pain and was bleeding.

115.    Her condition and face showed-up all over the news that night and received racist comments about her ethnicity online from the broadcast. Ms. Bouttavong was arrested 20 minutes later while still heading South. Despite her condition, she was still sent to the Davis County Jail. The nurse at the jail told her to go to the hospital after she was released. Ms. Bouttavong was diagnosed with a concussion later.

116.    Prior to this, Ms. Bouttavong never had issues with headaches and migraines. The first week after, the headaches were so severe she could not do anything and was sensitive to light. Since then, Ms. Bouttavong still suffers from headaches one to two times a week and it is harder for her to remember things. She also suffers from PTSD and always thinks she is going to get shot in the head.

117.    Ms. Bouttavong seeks damages for the unreasonable use of force and for pain and suffering past and future and medical damages incurred past and future for her injuries. Ms. Bouttavong also seeks damages related to the false arrest and damages comparable to false

imprisonment. Ms. Jones also seeks damages for the emotional trauma she sustained. Ms. Bouttavong also seeks damages to the false publicity and the false light[9] she was put in from the media inferring Ms. Bouttavong was arrested for violating a law with probable cause to arrest her.

### v. Mr. Westerguard

118.    On May 30th, 2020 Riley Westerguard was arrested on or about 9 or 9:30 PM. Mr. Westergard was near a line between protestors and law enforcement. Moments prior to the arrest, Mr. Westerguard was helping people move around so they could get out. Mr. Westerguard was not part of a riot or disorderly conduct and was arrested unprovoked and before any announcement of arrests were made from law enforcement. The arrest as a result was made without probable cause and acting under the color of the unlawful curfew order.

119.    One officer pulled Mr. Westerguard by the shirt and threw him to the ground and his head hit the curb. He couldn't feel his right thumb after the hit. Mr. Westerguard sustained bruises and suffered from a concussion. Mr. Westerguard was "dizzy" for a half hour.

120.    The use of force used against Mr. Westerguard was unreasonable in light of the circumstances in his attempts to help people leave as well as in light of law enforcement's purpose to enforce the unlawful curfew order.

121.    Mr. Westerguard seeks damages for the unreasonable use of force with the physical damages he incurred and pain and suffering. Mr. Westerguard also seeks damages to his reputation for the false light[10] and false publicity that was placed in the local media that he was

---

[9] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

[10] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

arrested with cause for committing a crime at that time. Mr. Westerguard also seeks damages related to the false imprisonment for the unlawful arrest that was made.

122.    All individuals that were arrested were placed on a bus that ultimately took them to the Davis County Jail where they were booked and released. They sat in a bus for hours until the bus took them to the Davis County Jail. The amount of time these individuals were arrested and released was approximately seven hours.

**5.    The City used unreasonable use of force against additional specific Plaintiffs that deprived them of their liberty in violation of the 4th Amendment of the U.S. Constitution.**

123.    In addition to law enforcement acting under an official policy from Salt Lake City under the unlawful curfew order to make arrests, law enforcement officers also used unreasonable use of force against some Plaintiffs in attempts to enforce the curfew order in addition to those already described above.

124.    Law enforcement officers acting as agents on behalf of Salt Lake City were "pushing" individuals backward in attempts to get them to move to get them out of the downtown Salt Lake City area.

125.    The attempts were solely to enforce the unlawful curfew order and quell the protests. This included discharging rubber bullets and bean bag guns at individuals including some Plaintiffs to "move the line" and was not part of any enforcement related to any disorderly conduct or any other unlawful activity.

### i.    Mr. Winkworth

126.    On May 30th, 2020, Ted Winkworth was shot in the back three times unprovoked with rubber bullets from law enforcement personnel that were enforcing the unlawful curfew order. The only intent of the officers in shooting was to push the line forward. Mr. Winkworth sustained

a large hand-sized purple bruise on his stomach as well as large bloody marks on his left side and elbow.

127.    Mr. Winkworth seeks damages related to the unreasonable use of force with the unprovoked shots in the back related to damages from assault and battery including pain and suffering.[11]

### ii.    Mr. Knebeo

128.    On May 30th, 2020,  Brogen Knebeo was at the front of the line between officers and protestors. Mr. Knebeo was not saying anything to officers when he was shot in the face and eye unprovoked at "point-blank" range (the gun was three feet away from him). This use of force in light of the circumstances and the unlawful curfew order and the shots with attempts to "move the crowd" and enforce the unlawful curfew order was unreasonable. The shot rendered Mr. Knebeo unconscious and woke up in the hospital. Mr. Knebeo had a foreign object stuck in his eye and blood pressure built up behind his eye.

129.    Mr. Knebeo never had vision issues prior to this. At his visit with the hospital, his vision was 20/40 in his left eye. His eye continued to hurt two months after the incident. His eyesight is now blurrier since the incident and had stuff stuck in his eye through January of 2021.

130.    Mr. Knebeo suffered from medical expenses that he could not afford, loss of work, had to borrow money from friends due to lost wages and now suffers from PTSD and emotional distress. He gets jumpy around sounds like nail guns or loud noises and shakes and gets anxious when he passes law enforcement officers.

131.    Based on the circumstances, under the fact that the shots were to only move individuals

---

[11] All references to tort claims in this complaint are referenced to show there is a remedial mechanism for the violations of the civil rights claims. There are no tort claims pleaded in this complaint or pleaded in the alternative of any civil rights claims.

and enforce a unlawful curfew order and as a result a means to punish individuals that were lawfully convened, also based on the fact that these individuals said or did nothing to get shot in the back by a rubber bullet, the use of force in this situation as a result was unreasonable and deprived all Plaintiffs of their liberty.

**132.  Punitive Damages**

133.  All Plaintiffs also seek punitive damages to the full amount authorized by law against Salt Lake City under all claims. Plaintiffs maintain the conduct alleged in this complaint was motivated by evil motive or intent or reckless or callous indifference to the first amendment rights of Plaintiffs as explained in the first amendment section.

134.  This is in addition to the unlawful arrests which were motivated by evil or reckless intent with the lack of probable cause and with only the intent to disperse the crowd lawfully convened and enforce the unlawful curfew order.

135.  This is in addition to the unreasonable use of force with was motivated by evil motive or reckless intent with the unprovoked shots on all Plaintiffs as well as the intent to enforce an unlawful curfew order and disperse a crowd exercising their first amendment rights.

136.  The mayor knew or should have known that her curfew order infringed on individual's rights as to the first amendment given the procedural requirements for such an order and the unlawfulness of the order in light of the first amendment.

137.  The officers also knew or should have known that the unreasonable use of force was with recklessness given that the rubber bullets as a means to move people and punish people for exercising their first amendment rights instead of attempt to enforce and investigate any unlawful conduct on another person.

138.    This is also in light of the fact that the officers brought a bus with the intent to move people out of the area exercising their rights and should have just cited individuals for any violations.

139.    This is also based on the fact officers did not know what to charge individuals with once they were arrested.

### PRAYER FOR RELIEF

140.    **WHEREFORE,** Plaintiffs requests the following relief in this manner:

141.    For judgment in favor of Plaintiffs based on a preponderance of the evidence of liability toward Salt Lake City.

142.    For damages reasonably calculated to be proven at trial.

143.    For an empaneled jury trial to determine liability and damages.

144.    Another other relief the court would deem appropriate under these circumstances.

145.    All Plaintiffs also seek reimbursement of attorney fees and costs as authorized under 42 U.S.C. 1983.

146.    All Plaintiffs seek pre and post interest on judgment rendered on this case.

147.    All Plaintiffs also seek punitive damages to the full amount authorized by law against Salt Lake City. Plaintiffs maintain the conduct alleged in this complaint was motivated by evil motive or intent or reckless or callous indifference to the first amendment rights of Plaintiffs as explained in the first amendment section. This is in addition to the unlawful arrests which were motivated by evil or reckless intent with the lack of probable cause and with only the intent to disperse the crowd lawfully convened and enforce the unlawful curfew order. This is in addition to the unreasonable use of force with was motivated by evil motive or reckless intent with the

unprovoked shots on all Plaintiffs as well as the intent to enforce an unlawful curfew order and

disperse a crowd exercising their first amendment rights.

Submitted this 10th day of October, 2021

/s/ Brian K. Jackson        #15296
Brian K. Jackson
Brian K. Jackson, LLC
Attorney for Plaintiffs